PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, § § *Plaintiff*, § § v. § § HUMAN POWER OF N COMPANY, d/b/a § HUMANN, f/k/a NEOGENIS LABS, INC, § § *Defendant*. § | Civil Action No. 6:21-cv-00144  **Jury Trial Demanded** |

**EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ANTI-INTERFERENCE INJUNCTION RELATED TO THERMOLIFE'S APPLICATION FOR EXTRA-JUDICIAL ADJUDICATION OF ITS PATENT INFRINGEMENT CLAIMS**

PUBLIC VERSION

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................................... 2

    A. ThermoLife Affirmatively Invoked This Court's Jurisdiction To Determine Whether The Accused Products Infringe The ThermoLife Patents. ................................................................................................................. 2

    B. ThermoLife Then Sought To Interfere With The Court's Jurisdiction By Seeking Extra-Judicial Adjudication Of Its Claims. ............................................... 2

    C. If ThermoLife Proceeds With Amazon's Patent Evaluation Process, The Result Could Substantially and Irreparably Harm HumanN. ................................ 4

III. LEGAL STANDARD ........................................................................................................... 5

    A. Temporary Restraining Order ............................................................................... 5

    B. Anti-Interference Injunction .................................................................................. 5

IV. ARGUMENT ......................................................................................................................... 6

    A. An Emergency TRO Is Necessary To Preserve The Status Quo. ......................... 6

    B. An Anti-Interference Injunction Is Necessary To Prevent ThermoLife From Seeking Extra-Judicial Adjudication Of Its Patent Infringement Claims Against ThermoLife. .................................................................................. 8

        1. ThermoLife's Conduct Both Interferes With The Court's Jurisdiction and Frustrates Its Policies (*Unterweser* Factors 1 and 3). ..................................................................................................... 8

        2. ThermoLife's Conduct Is Both Vexatious and Oppressive (*Unterweser* Factor 2). .............................................................................. 9

        3. Other Equitable Considerations Also Counsel In Favor Of Granting An Anti-Interference Injunction (*Unterweser* Factor 4). ........... 11

V. CONCLUSION .................................................................................................................... 12

**CERTIFICATE OF SERVICE** ................................................................................................ 14

**CERTIFICATE OF CONFERENCE STATEMENT** ............................................................ 14

**[PROPOSED] ORDER GRANTING EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER RELATED TO THERMOLIFE'S APPLICATION FOR EXTRA-JUDICIAL ADJUDICATION OF ITS PATENT INFRINGEMENT CLAIMS** ......................................................................... 1

PUBLIC VERSION

I.     **INTRODUCTION**

Defendant Human Power of N Company (d/b/a HumanN) ("HumanN") respectfully requests an emergency ex parte temporary restraining order ("TRO") and an anti-interference injunction ordering Plaintiff ThermoLife International, LLC ("ThermoLife") not to take any further action in filing or pursuing extra-judicial adjudication of its infringement claims through Amazon's Patent Evaluation Process.  What follows is a classic example of "Heads I Win, Tails You Lose."  Respectfully, it must be enjoined.

Despite affirmatively invoking this Court's jurisdiction by filing a patent infringement suit against HumanN in this Court, ThermoLife has made no effort to actually prosecute its claims. Instead, it attempted to make an end-run around the Court by seeking extra-judicial review of its infringement claims through Amazon's Patent Evaluation Process.  ThermoLife's motive in doing so is clear—the Amazon process offers the opportunity to obtain extraordinary relief to which ThermoLife would not otherwise be entitled.

When a patent infringement claim is submitted to Amazon's Patent Evaluation Process, a seller must either participate or have its products removed from www.amazon.com.  The evaluation will result in a yes/no decision about whether the patent covers the accused products. In the event of a "yes" decision, the products are removed from sale on www.amazon.com.  This extraordinary relief—which is tantamount to a preliminary injunction on sales through one of the largest retail channels in the world—is available without satisfying the stringent requirements that must typically be met to obtain such relief in a court. What's more, the infringement claims are evaluated is an abbreviated process that deprives HumanN of the ability to fully defend itself— only a limited subset of defenses are available, and no discovery or hearing will be permitted.

HumanN will be immediately and irreparably harmed if ThermoLife continues to pursue evaluation of its patent infringement claims through Amazon's Patent Evaluation Process because

1

it will face the untenable choice of (a) subjecting itself to an abbreviated process under which it is unable to fully defend itself, or (b) suffering substantial financial losses. Based on the procedures set by Amazon, HumanN must make this choice by April 23, 2021. HumanN thus requests that the Court enter an emergency TRO ordering ThermoLife not to take any further action to pursue review of its infringement claims against HumanN through Amazon's Patent Evaluation Process.

## II. STATEMENT OF FACTS

### A. ThermoLife Affirmatively Invoked This Court's Jurisdiction To Determine Whether The Accused Products Infringe The ThermoLife Patents.

On February 11, 2021, ThermoLife filed a patent infringement suit in this Court against HumanN, alleging that HumanN's SuperBeets, BeetElite, and Neo40 products ("the Accused Products") infringe certain claims of U.S. Patent Nos. 9,180,140 ("the '140 Patent"), 8,455,531 ("the '531 Patent"), and 10,555,968 ("the '968 Patent") (collectively, "the Asserted Patents"). ECF 1. ThermoLife's Complaint includes specific infringement allegations as to claim 1 of the '140 Patent, claim 62 of the '531 Patent, and claim 45 of the '968 Patent, *id.* at ¶¶ 33, 54, 69, but reserves the right to identify "additional infringing HumanN products and infringed claims of the Asserted Patents . . . in compliance with the Court's scheduling order and/or the local rules related to infringement contentions," *id.* at ¶ 28.

### B. ThermoLife Then Sought To Interfere With The Court's Jurisdiction By Seeking Extra-Judicial Adjudication Of Its Claims.

Despite having filed its Complaint nearly two months ago, ThermoLife has failed to take any action to prosecute its case. *See* Flint Decl. at ¶ 4 (attesting that ThermoLife still has not served HumanN with the Complaint). Instead, ThermoLife sought extra-judicial adjudication of its infringement claims through Amazon's Patent Evaluation Process. *Id.* at ¶ 5. On April 2, 2021, HumanN received notice that ThermoLife had filed a claim with Amazon alleging that HumanN's SuperBeets, BeetElite, and Neo40 products—which were already accused of infringement in this

litigation—infringe claim 45 of the '968 Patent—which was already asserted in this litigation—and requesting a formal evaluation through Amazon's Patent Evaluation Process. *Id.* at ¶¶ 5-6.

Once such a claim has been filed with Amazon, sellers like HumanN have limited options—either submit to the evaluation or have the products accused of infringement "removed from www.amazon.com." *Id.* at ¶ 7, Ex. 2 at p. 1. And that decision must be made very quickly. Here, HumanN must decide by April 23, 2021 whether to submit to the evaluation or have the Accused Products removed from www.amazon.com. *Id.* at ¶ 12; *see also id.* at ¶ 7, Ex. 2 at p. 1.

Submitting to the evaluation also comes with the risk that the seller's products will be removed from www.amazon.com. "A neutral evaluator reviews a patent infringement claim against third-party product listings on amazon.com" to determine whether the patent covers the products accused of infringement. *Id.* at ¶ 7, Ex. 2 at p. 1. A seller's ability to defend its products against an infringement claim is severely limited. "No discovery (e.g., depositions, document requests, etc.) will occur in the Evaluation, nor will there be a trial or hearing." *Id.* at ¶ 7, Ex. 2 at p. 3. And the only defenses that may be presented are:

> (1) The accused products do not infringe "based on failure to meet one or more claim limitations." *Id.* at Ex. 2 at p. 3
>
> (2) The asserted patent claim has already been found invalid or unenforceable "by a court of competent jurisdiction, or by the U.S. Patent Office or U.S. International Trade Commission." *Id.* "Arguments regarding, for example, invalidating prior art will not be accepted; the only way Sellers can show invalidity/unenforceability is by presenting a court, Patent Office, or ITC order finding an asserted patent claim invalid or unenforceable." *Id.*
>
> (3) "[T]he Accused Products (or physically identical products) were on sale one year or more before the asserted patent's earliest effective filing date," but this can be established "only by using credible evidence that the Evaluator can independently observe (such as a date of sale on amazon.com, or on the Wayback Machine)." *Id.* "The Evaluator will not accept affidavits, declarations, or mere arguments about the date of a sale; the Seller must come forward with independently verifiable objective evidence that the Evaluator can confirm." *Id.*

Based on this limited information, the evaluator will "make[s] a yes/no decision about whether the patent covers the product listings." *Id.* at Ex. 2 at p. 1. "If an evaluator concludes that an Accused Product is covered by a patent, Amazon will remove that Accused Product from www.amazon.com." *Id.* The entire process moves very quickly, with a decision from the evaluator expected approximately 14 weeks from the time a claim is filed.[1] And once a decision has been rendered, "[t]here is no process for reconsideration." *Id.* Indeed, the only way a seller can obtain relief is by supplying "a court order" demonstrating invalidity or non-infringement. *Id.*

### C. If ThermoLife Proceeds With Amazon's Patent Evaluation Process, The Result Could Substantially and Irreparably Harm HumanN.

As noted above, the products accused of infringement in this litigation—HumanN's SuperBeets, BeetElite, and Neo40 products—also form the basis for ThermoLife's request to initiate Patent Evaluation Process. Sales of those products on www.amazon.com account for approximately ▇▇▇▇ in annual revenue, which accounts for ▇▇ of HumanN's overall annual revenue. Flint Decl. at ¶¶ 9-11. Removal of the products from www.amazon.com would not only result in an ▇▇▇▇ financial loss for HumanN, but also has the potential to significantly damage the value of HumanN's brand and goodwill. *Id.* at ¶¶ 9-11 and 13-15.

As explained in the declaration of Mr. Flint, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at ¶ 14. If the products accused of infringement in this case and in ThermoLife's infringement claim with Amazon are removed from www.amazon.com, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] When an evaluation is requested, the seller accused of infringement has three (3) weeks to choose whether to participate. *See* Flint Decl. at Ex. 2 at p. 1. Thereafter, Amazon selects an evaluator and the parties have two (2) weeks to submit payment. *Id.* The typical schedule for written submissions is three (3) weeks for the patent owner to submit its initial arguments, two (2) weeks for the seller to submit its response, and one (1) week for the patent owner to submit its reply. *Id.* The evaluator will announce its decision within two (2) weeks of the reply date. *Id.* at p. 3.

███████████████████████████████████████████████████████████████ *Id.* The loss of convenient access to HumanN's products will significantly undermine HumanN's goodwill with its customers. *Id.* at ¶ 15.

## III. LEGAL STANDARD

### A. Temporary Restraining Order

Under Rule 65, a court may issue a temporary restraining order ("TRO") where specific facts in an affidavit clearly show that immediate and irreparable injury, loss, or damage will result to the movant. FED. R. CIV. P. 65. As explained below, HumanN satisfies these requirements. *See infra* Section IV.A.

### B. Anti-Interference Injunction

HumanN seeks an anti-interference injunction to prevent ThermoLife from pursuing extra-judicial adjudication through Amazon's Patent Evaluation Process of patent infringement claims over which this Court already has jurisdiction. It is well settled that a court may issue injunctions to protect its jurisdiction. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996). Such an injunction often takes the form of an antisuit, or anti-interference, injunction, which is "a particular subspecies of preliminary injunction." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003). Such injunctions prohibit a party to existing litigation from pursuing or initiating parallel proceedings.

When evaluating requests for such relief, courts in the Fifth Circuit apply the *Unterweser* framework,[2] which establishes that an injunction is appropriate when parallel proceedings would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3)

---

[2] *In re Unterweser Reederei GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), aff'd on reh'g, 446 F.2d 907 (5th Cir. 1971) (en banc) (per curiam), rev'd on other grounds sub nom; *see also M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972).

threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations."[3]  *Unterweser*, 428 F.2d at 896.  A party seeking such an injunction need not establish all four *Unterweser* threats—proof of just one is sufficient for a court to issue an anti-interference injunction.  *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006).  Here, however, ThermoLife's attempt to pursue extra-judicial adjudication of the patent infringement claims already subject to this Court's jurisdiction presents a threat under all four *Unterweser* factors.  *See infra* Section IV.B.

IV.     **ARGUMENT**

   A.   **An Emergency TRO Is Necessary To Preserve The Status Quo.**

While the Court weighs the compelling factors for issuing an anti-interference injunction, the Court should grant HumanN's request for an emergency TRO to preserve the status quo. *See Better Keiki, LLC v. HOUSEWARE*, 18-CV-226, 2018 WL 3603065, at *1 (E.D. Tex. May 14, 2018) (granting TRO and noting "the underlying purpose of preventing irreparable harm just so long as is necessary to hold a hearing").  As explained above, under Rule 65, a court may issue a TRO where specific facts in an affidavit or sworn declaration clearly show that immediate and irreparable injury, loss, or damage will result to the movant.  FED. R. CIV. P. 65.  HumanN satisfies those requirements.

HumanN will be immediately and irreparably harmed if ThermoLife continues to pursue evaluation of its patent infringement claims against HumanN through Amazon's Patent Evaluation Process because it will face the untenable choice of (a) subjecting itself to an abbreviated process on the identical patent claim and accused products pending before this Court, or (b) suffering

---

[3]  Where the parallel proceedings under consideration are in a foreign jurisdiction, the Court must also balance the *Unterweser* threats against "international comity."  *Karaha Bodas*, 335 F.3d at 366.  Here, however, the parallel proceedings under consideration are private, extra-judicial proceedings; therefore, considerations of "international comity" are inapplicable.

substantial financial losses. *See* Flint Decl. at ¶¶ 9-15; *see also supra* Sections II.B-II.C. Based on the procedures set by Amazon, HumanN must make this choice by April 23, 2021. *See* Flint Decl. at ¶ 12.

As noted above, if HumanN elects not to participate in Amazon's evaluation process, the Accused Products will be "removed from www.amazon.com." *See supra* Section II.B. This would represent a substantial financial loss for HumanN. *See supra* Section II.C. And even if HumanN elects to participate, there is still a risk that its products will be removed from www.amazon.com. This is so because, as explained further below, Amazon's Patent Evaluation Process is abbreviated and does not permit a full defense. It not only offers ThermoLife the possibility of effectively obtaining a preliminary injunction against sales of the Accused Products on www.amazon.com without actually having to satisfy the stringent requirements typically necessary to obtain such relief, but also deprives HumanN of the right to fully defend itself. The prospect of being forced to participate in an abbreviated, extra-judicial proceeding poses an immediate and irreparable harm to HumanN's interest in proceeding with this litigation.

A TRO is particularly necessary in these circumstances to preserve the status quo because, otherwise, there is nothing to stop ThermoLife from continuing to pursue Amazon's Patent Evaluation Process with respect to the '968 Patent or initiating such proceedings with respect to other ThermoLife patents. Because HumanN meets the criteria for an emergency TRO and is prepared to offer a bond should the Court require it, the Court should issue a TRO to prevent ThermoLife from further pursuing or initiating additional proceedings under Amazon's Patent Evaluation Process.

**B.** **An Anti-Interference Injunction Is Necessary To Prevent ThermoLife From Seeking Extra-Judicial Adjudication Of Its Patent Infringement Claims Against ThermoLife.**

As explained above, courts in the Fifth Circuit apply the four-factor *Unterweser* framework when evaluating requests for such relief. *See supra* Section III.B. Here, all four factors weigh in favor of granting an anti-interference injunction to prevent ThermoLife from further pursuing or initiating extra-judicial adjudication of its patent infringement claims against HumanN.

**1.** **ThermoLife's Conduct Both Interferes With The Court's Jurisdiction and Frustrates Its Policies (*Unterweser* Factors 1 and 3).**

Despite affirmatively invoking this Court's jurisdiction by filing a Complaint against HumanN for patent infringement, ThermoLife nonetheless sought to make an end-run around the Court by seeking extra-judicial adjudication of its infringement claims through Amazon's Patent Evaluation Process. *See supra* Section II.B. ThermoLife's motivation for doing so is clear. In the event of a favorable decision through the Amazon process, ThermoLife would effectively be granted a preliminary injunction on sales of the Accused Products through www.amazon.com. *Id.* ("If an evaluator concludes that an Accused Product is covered by a patent, Amazon will remove that Accused Product from www.amazon.com."). And ThermoLife could obtain this relief without satisfying the requirements typically necessary to obtain a preliminary injunction. *Compare Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") *with* FlintDecl. at Ex. 2 (Amazon's procedures do not require a showing that irreparable harm is likely, that the balance of equities favors relief, or that the public interest favors relief).

PUBLIC VERSION

Congress empowered federal courts—not Amazon or its evaluators—to adjudicate and, if warranted, to enjoin infringement of U.S. patents. 35 U.S.C. §§271, 287. And federal courts have unquestioned authority to resist efforts to undermine their "right and obligation" to adjudicate matters properly within their jurisdiction. *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 935-36 (D.C. Cir. 1984).[4] Accordingly, "when the actions of a litigant in another forum" threatens the court's ability to do so, "the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in [those] proceedings." *Id.* at 927.

Here, allowing ThermoLife to further pursue or initiate additional patent evaluation proceedings through Amazon's Patent Evaluation Process both undermines the Court's jurisdiction and frustrates the policies put in place to ensure fair and speedy resolution of such claims. ThermoLife is effectively seeking a second bit at the apple through Amazon's Patent Evaluation Process because, regardless of the outcome of the Amazon process—should it not be enjoined—ThermoLife's claims in this Court will continue. HumanN thus respectfully requests that the Court exercise its unquestioned authority to resist ThermoLife's efforts to undermine the Court's jurisdiction over the patent infringement claims against HumanN.

### 2. ThermoLife's Conduct Is Both Vexatious and Oppressive (*Unterweser* Factor 2).

In determining whether proceedings in another forum are vexatious or oppressive, courts in the 5th Circuit consider: (1) whether the proceeding would produce "inequitable hardship;" (2) whether the proceeding would frustrate or delay the court's consideration of the cause; and (3) the

---

[4] *See also id.* at 927 ("Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants," and "when the actions of a litigant in another forum" threatens the court's ability to do so, "the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in [those] proceedings.").

extent to which the other proceeding is duplicative of the district court proceeding. *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Kaepa*, 76 F.3d at 627). Here, all three factors are present.

First, ThermoLife's continued pursuit of the Amazon Patent Evaluation Process would result in inequitable hardship for HumanN. As explained above, now that a claim has been filed with Amazon, HumanN has limited options—either submit to the evaluation or have the Accused Products "removed from www.amazon.com." *See supra* Section II.B. But submitting to the evaluation also comes with the risk that the seller's products will be removed from the website. *Id.* Sales of the Accused Products on www.amazon.com account for approximately ▇▇▇ in annual revenue for HumanN. *See supra* Section II.C. Allowing ThermoLife to effectively obtain a preliminary injunction against those sales without satisfying the stringent requirements that must typically be met to obtain such extraordinary relief would result in inequitable hardship for HumanN. That hardship is compounded by the fact that Amazon's process severely limits HumanN's ability to defend itself—not only are the defenses available to HumanN significantly curtailed compared to those available in this Court, but HumanN would be largely unable to test the veracity of ThermoLife's claims given the prohibition on discovery. *See supra* Section II.B. In addition, Amazon's Patent Evaluation Process provides no mechanism to challenge the outcome of the proceedings. *Id.*

ThermoLife's pursuit of the Amazon Patent Evaluation Process would also frustrate the Court's consideration of the claims and defenses in this case. As stated above, Congress empowered federal courts—not Amazon or its evaluators—to adjudicate and, if warranted, to enjoin infringement of U.S. patents. 35 U.S.C. §§271, 287. Allowing ThermoLife to further pursue or initiate additional proceedings under Amazon's Patent Evaluation Process would both

undermine the Court's jurisdiction and frustrate the policies put in place to ensure fair and speedy resolution of such claims. *See supra* Section IV.B.1.

Finally, ThermoLife's attempt to obtain extra-judicial adjudication of its claims through Amazon's Patent Evaluation Process is duplicative and entirely unnecessary. In the claim filed with Amazon, ThermoLife requests evaluation of its claim that HumanN's SuperBeets, BeetElite, and Neo40 products—which were already accused of infringement in this litigation—infringe claim 45 of the '968 Patent—which was already asserted in this litigation. *See supra* Section II.B; *see also* ECF 1 (Complaint).

In light of these factors, the only explanation for ThermoLife's decision to pursue evaluation of its claims through the Amazon process is that it offers an opportunity to effectively obtain a preliminary injunction without satisfying the stringent requirements normally imposed on requests for such extraordinary relief. Such conduct is vexatious and oppressive.

### 3. Other Equitable Considerations Also Counsel In Favor Of Granting An Anti-Interference Injunction (*Unterweser* Factor 4).

Absent the Court's intervention, HumanN stands to suffer irreparable harm as a result of ThermoLife's initiation and pursuit of Amazon's Patent Evaluation Process. If ThermoLife continues to pursue its infringement claim with Amazon, HumanN must either submit to the Patent Evaluation Process or have the Accused Products removed from www.amazon.com. *See supra* Section II.B. Given the substantial revenue generated from sales of the Accused Products on www.amazon.com, this is effectively a Hobson's choice. Thus, absent the Court's intervention, HumanN will be forced to submit to Amazon's Patent Evaluation Process, which includes a number of significant inequities. First, as explained above, the process offers ThermoLife the possibility of effectively obtaining a preliminary injunction against sales of the Accused Products on www.amazon.com without actually having to satisfy the stringent requirements typically

necessary to obtain such relief. *See supra* Sections II.B and IV.B.1. Second, as also explained above, Amazon's Patent Evaluation Process deprives HumanN of the right to fully defend itself against the patent infringement claims asserted by ThermoLife. *See supra* Sections II.B and IV.B.2.

In addition to inequities of the proceeding itself, the possibility of the Accused Products being removed from www.amazon.com would result in not only a significant financial loss for HumanN, but also substantial damage to HumanN's brand and goodwill. For example, as explained above, if the products accused of infringement in this case and in ThermoLife's infringement claim with Amazon are removed from www.amazon.com, ████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ which will significantly undermine HumanN's goodwill with its customers. *See* Flint Decl. at ¶¶ 13-15; *see also supra* Section II.C.

Avoiding the substantial risk of harm to HumanN as a result of Amazon's Patent Evaluation Process weighs strongly in favor of an injunction that would prohibit ThermoLife from further pursuing or initiating evaluation of patent infringement claims against HumanN through Amazon's Patent Evaluation Process.

V. **CONCLUSION**

Respectfully for the above reasons, the Court should grant HumanN's application and issue a temporary restraining order and an anti-interference injunction ordering ThermoLife not take any action to further pursue, request, or initiate evaluation through Amazon's Neutral Patent Evaluation process of ThermoLife's claims that HumanN's SuperBeets, BeetElite, and Neo40 products infringe any patent for which ThermoLife is the assignee and/or exclusive licensee, including but not limited to, U.S. Patent Nos. 10,555,9689,180,140, and 8,455,531.

PUBLIC VERSION

Dated:  April 8, 2021

Respectfully submitted,

By: */s/ Brett C. Govett*
     Brett C. Govett

NORTON ROSE FULBRIGHT US LLP
Brett C. Govett (Texas Bar No. 08235900)
Jacqueline G. Baker (Texas Bar No. 24109609)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
brett.govett@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com

Stephanie DeBrow (Texas Bar No. 24074119)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
stephanie.debrow@nortonrosefulbright.com

Saul Perloff (Texas Bar No. 00795128)
111 W Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
saul.perloff@nortonrosefulbright.com

***COUNSEL FOR HUMAN POWER OF N COMPANY***

PUBLIC VERSION

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 7, 2021 all counsel of record who are deemed to have consented to electronic service were served with a copy of Defendant's sealed Motion via the Court's CM/ECF system, and on April 8, 2021 counsel are being served with this Public Version of the Motion. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Brett C. Govett*
Brett C. Govett

### CERTIFICATE OF CONFERENCE STATEMENT

Due to the exigent circumstances, HumanN did not confer with ThermoLife before filing this ex parte motion but will attempt to confer before a hearing on the motion.

*/s/ Brett C. Govett*
Brett C. Govett

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTER DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>HUMAN POWER OF N COMPANY, d/b/a §<br>HUMANN, f/k/a NEOGENIS LABS, INC, §<br>§<br>*Defendant*. § | Civil Action No. 6:21-cv-00144<br><br>**Jury Trial Demanded** |

**[PROPOSED] ORDER GRANTING EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER RELATED TO THERMOLIFE'S APPLICATION FOR EXTRA-JUDICIAL ADJUDICATION OF ITS PATENT INFRINGEMENT CLAIMS**

The Court has considered the Emergency Application for Temporary Restraining Order and Anti-Interference Injunction filed by Defendant Human Power of N Company ("HumanN"). Having considered the matter, the Court finds good cause exists to temporarily restrain ThermoLife International, LLC ("ThermoLife") as requested in HumanN's application. The Court finds that the status quo should be maintained pending the Court's evaluation of, and ruling on, a preliminary injunction. The Court finds a substantial risk of irreparable harm to HumanN, and to the jurisdiction of this Court, if ThermoLife were to attempt to enforce or further pursue extra-judicial review of patent infringement claims relating to the products already accused of infringement in this litigation. In contrast, the harm to ThermoLife of maintaining the status quo is negligible because, if patent infringement is ultimately found, it can be remedied by an award of damages.

IT IS THEREFORE ORDERED THAT, effective immediately, ThermoLife and all of its affiliates, officers, directors, shareholders, employees, or those in active concert with it, shall refrain from any of the following acts until further order of this Court:

    A. Taking any action to further pursue evaluation through Amazon's Patent Evaluation Process of ThermoLife's claims that HumanN's SuperBeets, BeetElite, and Neo40 products infringe any claim of any patent for which ThermoLife is the assignee and/or exclusive licensee, including but not limited to U.S. Patent Nos. 9,180,140; 8,455,531; and 10,555,968;

IT IS FURTHER ORDERED THAT ThermoLife shall respond to HumanN's request for an anti-interference injunction prohibiting ThermoLife and all of its affiliates, officers, directors, shareholders, employees, or those in active concert with it, from engaging in such actions as described in Paragraph A. The Court establishes the following briefing schedule for consideration of HumanN's preliminary injunction request:

    1. ThermoLife will have until ___ on ___ to file with this Court and serve on HumanN's counsel any Opposition to the continuation of the Temporary Restraining Order or conversion of that order to a preliminary injunction. ThermoLife's Opposition will be limited to ___ pages, exclusive of evidence.

    2. HumanN will have until ___ on ___ to serve a Reply. HumanN's Reply will be limited to ___ pages, exclusive of evidence.

IT IS FURTHER ORDERED THAT a preliminary injunction hearing is set for ___ on ___ in the United States District Court for the Western District of Texas, Waco Division.

- 3 -

Because ThermoLife is unlikely to suffer harm by continuing to be subject to the jurisdiction of this Court and by maintaining the status quo, the Court finds that the proper amount of security under Rule 65(c) is **Zero United States Dollars ($0.00)**.