**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>HUMAN POWER OF N COMPANY, d/b/a<br>HUMANN, f/k/a NEOGENIS LABS, INC.,<br><br>       Defendant. | Case No. 6:21-cv-00144-ADA |

**PLAINTIFF THERMOLIFE INTERNATIONAL, LLC'S
OPPOSITION TO DEFENDANT'S EMERGENCY APPLICATION
FOR TEMPORARY RESTRAINING ORDER**

In advance of the Court's hearing on April 9, ThermoLife files this response to HumanN's application for an emergency temporary restraining order ("TRO"). ThermoLife will fully respond to HumanN's motion for a preliminary injunction under the Local Rules or as scheduled by the Court, if the Court entertains it.

HumanN asks this Court to do something <u>never</u> done before: issue an emergency TRO under the guise of an "anti-interference" injunction to immediately bar a patentee from certain forms of communications with a potential third-party defendant, with whom the patentee conditionally settled, and that potential defendant's outside counsel. There is (1) no "emergency" to justify the requested immediacy of such extraordinary relief; nor is there (2) any facially plausible ground to award it in the first instance, for any amount of time.

First, the ***sole*** alleged harm in HumanN's TRO application is that it has to make a decision to participate in the deliberative process with Amazon's outside patent counsel by the April 23, 2021 deadline that Amazon set. But HumanN's motion for a preliminary injunction can be fully briefed in advance of that deadline. And HumanN's requested relief does not even solve its alleged harm: HumanN seeks to enjoin ***ThermoLife*** from "taking any action to further pursue evaluation" by Amazon. But Amazon set that deadline, and HumanN, as an Amazon seller, has to respond to it regardless of what actions ThermoLife does or does not take. But there is no action for ThermoLife to take between now and April 23, 2021. ThermoLife's next upcoming deadline, per the Amazon contract, is nearly a month later, at the very the earliest. There is simply no basis for an emergency TRO to issue.

Second, an "anti-interference" (or "anti-suit") injunction here requires a "judicial proceeding" that might interfere with the Court's jurisdiction to decide the patent claims before it. HumanN admits that. But HumanN's application concerns an internal business decision by

1

Amazon—a third party not before this Court—to decide if it wants to continue to sell some of HumanN's products. Amazon's decision is not a court proceeding and it has no impact on this Court's jurisdiction or practical ability to adjudicate infringement, validity, or damages. It is simply a business decision by a private third-party to decide what products it wants to sell. And HumanN presumably has even agreed to Amazon's policies as a condition of selling on the website. If it dislikes them, it has to resolve that dispute with Amazon directly (and, it seems, through binding arbitration). HumanN cites no authority for its unprecedented request that the Court enjoin Amazon's internal business decisions—when there are no claims against Amazon— under the guise of an "anti-suit injunction." And there is none.[1]

## I.     STATEMENT OF FACTS

### A.     The Amazon "Utility Patent Neutral Evaluation" Process

Third-party sellers on Amazon.com voluntarily subject themselves to expansive and detailed terms to use Amazon's services and website. For example, Amazon's "Services Business Solutions Agreement" requires third-party sellers to license certain IP, to not infringe others' IP, and consent to "binding arbitration" for "any dispute with Amazon or its Affiliates or claim relating in any way" to Amazon's services and the third-party's use of those services. *See* https://sellercentral.amazon.com/gp/help/external/help.html?itemID=1791&ref=efph_1791_cont_home. Traditionally, Amazon has enforced such business terms on sellers by allowing for easy reporting of IP infringement and taking down infringing products, but based on unseen internal infringement analysis. *See*

---

[1] An "anti-interference injunction" is a new form of injunction involving an attempt to enjoin a party from enforcing an anti-suit injunction (i.e., an "anti-anti-suit injunction"). *See Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-cv-380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 1, 2021). On that basis alone, it has no applicability here. And HumanN's motion also seeks novel relief by applying the anti-suit injunction framework, which is meant to halt participation in foreign judicial proceedings, to a non-judicial private corporation's business dealings.

2

https://sellercentral.amazon.com/gp/help/external/help.html?itemID=U5SQCEKADDAQRLZ&ref=efph_U5SQCEKADDAQRLZ_cont_home.

In 2019, however, Amazon started a pilot program—the "Utility Patent Neutral Evaluation" or UPNE for short—through which it started to impose new terms on certain third-party sellers who were reported as selling infringing goods on Amazon.com, in order "[t]o efficiently resolve claims that third-party product listings infringe utility patents" and absolve the liability risk to Amazon of continuing to sell and host potentially infringing products on its website. (Mot. Ex. 2 at 1).

**The UPNE is not a judicial proceeding**.  In that UPNE process, after a patentee has reported infringement by a third-party seller (like ThermoLife did here to Amazon), Amazon, in its business discretion, can invite the patentee to (1) release Amazon from liability for infringement of one patent-at-issue (which ThermoLife did here with respect to the '968 patent) in exchange for (2) Amazon hiring independent outside patent counsel (an "Evaluator," as Amazon calls them) to assist Amazon in determining whether a third-party seller's goods infringe.  (*See* Mot. Ex. 2).  If a patentee accepts Amazon's invitation and releases Amazon from liability, then Amazon will require the third-party seller (along with the patentee) to brief Amazon's chosen outside patent counsel on one claim of one patent, and then outside counsel will then tell Amazon whether or not they believe that the third-party good likely infringes.  Amazon instructs its outside patent counsel in that process to streamline the analysis by, as the law supports, assuming the validity of the one claim at issue and advising Amazon only as to whether the third-party seller's product practices the claim on a straightforward essentially "yes/no" basis.  The whole process takes approximately 3-4 months.  Thus, the UPNE terms are simply a way for Amazon to get an efficient opinion of outside counsel to make the internal business risk analysis and decision regarding whether or not

to continue hosting certain products.

**The April 23, 2021 Date.**  Amazon gives the seller three weeks to agree to those new terms for continuing to sell its potentially infringing goods on Amazon.com (here, for HumanN, until April 23).  If the seller elects to refuse those new terms of sale and does not want to engage with Amazon's outside patent counsel, Amazon will make the business decision to stop the seller from selling on Amazon.  If the seller agrees, then Amazon will abide by its outside patent counsel's recommendation on likelihood of infringement one way or the other (a decision the settling patentee has to live with, without appeal).

**The UPNE settlement process respects the jurisdiction of courts.**   Third-party sellers on Amazon are not without recourse against the new UPNE terms that Amazon can choose to impose on their sales.  First, if they do not like Amazon's new terms for continuing to sell its goods (like HumanN seems to here), they can arbitrate with Amazon for (presumably) breach of contract—<u>which they are bound to do</u>.  Second, they can stop selling with Amazon and move their business to another ubiquitous online platform, like eBay or Walmart.  Or third, they can go through with the process and, if Amazon's counsel says that their good likely infringes, they can go to the PTO or a federal court and get a judgment of invalidity or noninfringement.  <u>Amazon says in its UPNE terms that it will respect such a judgment of the PTO or the Court—not interfere with it—and abide by it over its counsel's advice.  (*See* Mot. Ex. 2).  Indeed, Amazon requires the parties to the process to agree that they will not seek any discovery or use any documents from the UPNE in any judicial proceeding.  (*See id.*).</u>

### B. The Requested TRO

HumanN's TRO request is sweepingly broad.  It covers every patent ThermoLife owns (not just the ones in suit over which this court has jurisdiction) and covers every SuperBeets, BeetElite, and Neo40 product (when the Amazon UPNE—contrary to HumanN's claims—only

4

covers one sub-line of SuperBeets products). HumanN also does not request in its TRO that ThermoLife not sue Amazon, send warning letters to Amazon, or negotiate the same outcome of the UPNE with Amazon on an individual basis. Nor does the TRO relieve ThermoLife of its covenant-not-to-sue Amazon for infringement of the '968 patent. And HumanN's TRO request does not address other third-party sellers (like GNC) that also were invited by Amazon to the same UPNE process for Superbeets.[2]

## II. ARGUMENT

### A. HumanN Has Not (and Cannot) Demonstrate Immediate and Irreparable Harm—the TRO Should Be Denied

There is simply no "emergency" or "immediate" harm here. HumanN could only be entitled to a TRO "if it "furnishe[d] specific facts in an affidavit or a verified complaint which clearly show ***immediate and irreparable*** injury, loss, or damage will result to the movant ***before the adverse party can be heard*** in opposition." *See, e.g.*, *Garcia v. Sanchez*, 793 F. Supp. 2d 866, 886 (W.D. Tex. 2011) (emphases added). That high burden is far from met here.

As HumanN admits (Mot. at 3), its initial AUNPE response is not due until April 23. That response is simply a decision by ***HumanN*** of whether to participate or not; there is no action for ThermoLife to take. Thus, a TRO against ThermoLife would do nothing to alter that deadline.

---

[2] On an aside, HumanN claims that Thermolife "failed to take any action to prosecute its case." But ThermoLife initiated settlement discussions the day after the complaint was filed and those discussions included prolonging service to help the parties efficiently settle this case. Also, HumanN claims that it could not meet and confer on its motion, yet counsel for the parties conferred about other relief regarding the same Amazon UPNE request the same day that HumanN's motion was filed. On that ground alone the motion should be denied. *See, e.g.*, *Navarette*, 2020 U.S. Dist. LEXIS 247508, at *2-4 (denying motion for failure to comply with Local Rule CV-7(i) and "not[ing] how a proper meet and confer process could have resolved this dispute"); *see also Bell v. Scarborough*, No. 1:19-cv-1080-LY, 2021 U.S. Dist. LEXIS 40271, at *3-5 (W.D. Tex. Mar. 4, 2021) (same).

Most importantly, though, the alleged "irreparable harm" here from lost sales of HumanN products that the TRO is purportedly required to avoid will not happen *for at least several months*. Indeed, HumanN admits the AUNPE would not be completed for *several months*. (Mot. at 4). And there is no guarantee that the products would be removed—HumanN merely assumes that it is a foregone conclusion that the evaluator will find infringement and the products will be removed from Amazon. (Mot. at 4). An emergency TRO cannot be justified by potential harm that has not yet begun and will not be completed for months after briefing on a preliminary injunction would be concluded.

Moreover, ThermoLife's participation in the UNPE process, whether on a subset of products and a single patent (as currently composed), or on something broader, does not create the potential of irreparable harm to HumanN. The UNPE is not a judicial proceeding, but is rather a way that Amazon, as a potential defendant to patent infringement actions, devised to resolve patent infringement litigation *between Amazon and patent owners*. It is a decision by Amazon on how to regulate Amazon's own website. HumanN's Motion is an attempt to interfere in and frustrate the business decisions of and resolution of disputes between others and Amazon, and should be rejected on that basis. Indeed, the heart of HumanN's dispute here centers on the *terms* of Amazon's decision-making process—not that HumanN's product could be removed from Amazon.com (the TRO does not even prevent Amazon from immediately removing HumanN's products through the UPNE or otherwise). That dispute over terms of selling goods on Amazon is a contractual one with Amazon (not ThermoLife) and one that almost certainly must be arbitrated (and is thus is beyond this Court's injunctive jurisdiction under the Federal Arbitration Act).

Moreover, HumanN has also failed to show any actual irreparable harm that could flow from the UPNE. The amount of HumanN's sales revenue HumanN mentions is not high enough to establish irreparable harm if it declines—indeed the amount of revenue from Superbeets (the only product at issue in the UPNE) is much lower. Nor does HumanN account for the simple fact that customers would just buy the same products from HumanN's website, or another third-party website such as Walmart, instead. And any lost sales revenue is not "irreparable"—HumanN can collect damages from Amazon for any financial losses if it believes that Amazon's potential choice ***months from now*** to stop hosting Superbeets was wrong or a breach of their contract.

For all of these reasons, as well as the reasons discussed below in regard to HumanN's motion for an anti-interference injunction, HumanN's motion for a TRO should be denied.

### B.  HumanN Cannot Use an Anti-Suit Injunction to Halt Dispute Resolution Between Amazon and ThermoLife

While ThermoLife is still fully analyzing the unprecedented form of injunctive relief HumanN seeks, it is readily apparent that the motion lacks merits on several grounds that justify immediately denying it.

For example, HumanN's citation to *Kaepa* and *Karaha* indicate that it is seeking an anti-suit injunction. (*See* Mot. at 7). But anti-suit injunctions are meant to "protect the court's jurisdiction against the need to defer to principles of international comity" and prevent vexatious or oppressive ***litigation***. *See MWK Recruiting Inc. v. Jowers*, 833 Fed. App'x 560, 562 (5th Cir. Nov. 6, 2020) (anti-suit injunctions may also be sought where issues are being litigated in state and federal court). Fundamental to recognizing this "special application of . . . injunction rules" is that there is a risk to a court's jurisdiction ***by another judicial body***. But ***Amazon is not a judicial body***; it is a ***potential defendant*** to patent litigation claims by ThermoLife. HumanN's

7

attempt to cast the UPNE as an "extra-judicial" adjudication (Mot. at 5) is simply an attempt at conveniently artful wording.

Moreover, as HumanN admits, anti-suit injunctions can only be issued to protect a Court's jurisdiction. Here, according to HumanN, the injunction would protect this Court's jurisdiction to adjudicate the patent claims. But Amazon imposing contractual terms on HumanN for continued sales of Superbeets and making the (potential) business decision to remove Superbeets from Amazon's website has no impact on this Court's jurisdiction or practical ability to adjudicate infringement, validity, or damages. It is simply a business decision by a private third-party to decide what products it wants to sell.

In addition, any injunction here would frustrate Amazon's ability to seek, receive, and follow advice of its outside patent counsel to potentially stop selling an infringing good. There is no ground for the Court to interfere with that. Not to mention that Courts should encourage parties to respect IP rights and settle their disputes. Indeed, Amazon and ThermoLife effectively settled their dispute over the '968 patent by agreeing to the UPNE. Preventing ThermoLife and Amazon from making-good on that settlement would frustrate the "strong public interest in settlement of patent litigation" that courts should not undermine. *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 477 (Fed. Cir. 1991). And HumanN should not be allowed to request injunctions from a Court to avoid contractual terms it does not like. HumanN's dispute here is with Amazon, not ThermoLife, and as such must be settled under the terms of HumanN's contract with Amazon, which appears to require binding arbitration (an obligation that, under the Federal Arbitration Act, cannot be inferred with or avoided by a district court's injunction).

Aside from the facial absence of a legal basis to issue an anti-suit injunction here, HumanN effectively seeks to control Amazon's ability to resolve its internal disputes. If the Court were to

grant this injunctive relief, it would interfere with Amazon's ability to reduce the risk from potential patent infringement matters not just for this case but others in the future as well. Indeed, if a takedown off of Amazon's website is "irreparable harm," any such act by Amazon would expose Amazon to the potential for immediate injunctive relief and intrusion into its business decisions. This is both fundamentally unfair and outside the Court's jurisdiction to enforce anti-suit injunctions even if Amazon were a court or judicial body. Anti-suit injunctions restrain a party subject to the Court's jurisdiction from acting, but do not restrain a foreign court (and certainly not a private entity). *See E. & J. Gallo Winery v. Andia Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006).

### C. Form of TRO and Bond

If this Court were inclined to issue a TRO in some form, it should not issue the one requested by HumanN. That proposed TRO encompasses patents that are not in suit, and thus clearly beyond this Court's jurisdiction to adjudicate issues for the patents-in-suit. Moreover, any TRO or injunction should at least exclude the current UPNE process and Superbeets; not doing so would result in irreparable harm to ThermoLife, which has already given a covenant on the '968 patent on Superbeets to Amazon because of the UPNE.

Last, a $0 bond on an injunction is not adequate to protect ThermoLife's interests. That bond amount should be set at the expected amount of profits collected by HumanN on all Amazon sales for expected term of the injunction, starting on the date upon which Amazon would have otherwise removed HumanN's products from its website.

### III. CONCLUSION

For the foregoing reasons, HumanN's request for a TRO and anti-interference injunction should be denied.

Dated: April 9, 2021                     Respectfully submitted,

/s/ Steve Udick

Steve Udick
TX Bar No. 24079884
RUSS, AUGUST & KABAT
5570 FM 423, Suite 250-2069
Frisco, Texas 75034
E-mail: sudick@raklaw.com
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Marc A. Fenster (CA Bar No. 181067)
E-mail: mfenster@raklaw.com
Reza Mirzaie (CA Bar No. 246953)
E-mail: rmirzaie@raklaw.com
Amy E. Hayden (CA Bar No. 287026)
E-mail: ahayden@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Robert J. Gajarsa
(*pro hac vice* motion on file)
DC Bar No. 996427
RUSS, AUGUST & KABAT
800 Maine Avenue SW, Suite 200
Washington, DC 20004
E-mail: rgajarsa@raklaw.com
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Gregory K. Sobolski
(*pro hac vice* motion to be filed)
CA Bar No. 267428
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
E-mail: greg.sobolski@lw.com
Telephone: (415) 395-8035
Facsimile: (415) 395-8095

        William E. Davis, III
        Texas State Bar No. 24047416
        bdavis@davisfirm.com

        Christian J. Hurt
        Texas State Bar No. 24059987
        churt@davisfirm.com

        **The Davis Firm, PC**
        213 N. Fredonia Street, Suite 230
        Longview, Texas 75601
        Telephone: (903) 230-9090
        Facsimile: (903) 230-9661


        *Attorneys for ThermoLife International, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 9, 2021.

<i>/s/ Steve Udick</i><br>
Steve Udick