**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, | Case No. 6:21-CV-00144-ADA |
| Plaintiff, | |
| v. | |
| HUMAN POWER OF N COMPANY, d/b/a HUMANN, f/k/a NEOGENIS LABS, INC., | |
| Defendant. | |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF HUMAN POWER OF N**
**COMPANY'S MOTION FOR LEAVE TO FILE ITS SECOND AMENDED**
**ANSWER AND COUNTERCLAIMS, AND BRIEF IN SUPPORT**

Defendant and Counterclaim Plaintiff Human Power of N Company, d/b/a HumanN, f/k/a NeoGenis Labs, Inc. ("HumanN") respectfully submits this motion for leave to file its Second Amended Answer, Defenses, Counterclaims, and Request for Injunctive Relief ("Second Amended Counterclaims") pursuant to Federal Rule of Civil Procedure 15(a). *See* Ex. A (HumanN's Second Amended Counterclaims).[1] HumanN files this Motion to add Counterclaims for damages and injunctive relief for Counterclaim Defendant ThermoLife International, LLC's ("ThermoLife") false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and tortious interference with HumanN's prospective business relations in violation of Texas common law—Counterclaims IX and X respectively.

## I.    INTRODUCTION

HumanN's current Counterclaims seek declaratory relief regarding ThermoLife's erroneous allegations of infringement of invalid patents, and an injunction barring ThermoLife from attempting an end-run around this Court's jurisdiction over this patent dispute through its

---

[1] All exhibits are attached to the Declaration of Saul Perloff, submitted herewith.

repeated invocations of Amazon's Neutral Patent Evaluation Process ("PEP"). In the Second Amended Counterclaims, HumanN seeks to add damages claims for ThermoLife's ongoing false advertising (Counterclaim IX) and tortious interference with HumanN's prospective business relations (Counterclaim X). As ThermoLife itself has argued, these proposed counterclaims are related to ThermoLife's claims for infringement, and were, in large part, asserted as counterclaims in the suit ThermoLife previously brought—but then abandoned—in the District of Arizona in *ThermoLife Int'l, LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980 (D. Ariz.) ("*ThermoLife II*").

Under the liberal standards of FED. R. CIV. P. 15(a), the Court should allow this amendment. ThermoLife can demonstrate neither futility nor prejudice. To begin with, the viability of these claims already was assessed in *ThermoLife II,* and Judge Lanza rejected ThermoLife's motions to dismiss. *See ThermoLife Int'l LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980, 2020 WL 6395442, at *11-12 (D. Ariz. Nov. 2, 2020) (denying motion to dismiss false advertising counterclaim); *ThermoLife Int'l LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980, 2021 WL 1400818, at *11 (D. Ariz. Apr. 14, 2021) (denying motion to dismiss amended tortious interference counterclaim). Nor has there been any undue delay in this case: HumanN brought these Counterclaims shortly after obtaining voluntary dismissal in *ThermoLife II.* Finally, ThermoLife cannot show cognizable prejudice. Discovery has only recently opened, dispositive motions are not due for more than half a year, and trial likely will not take place until 2023. Moreover, much of the discovery on these proposed Counterclaims—including third party discovery—was taken in *ThermoLife II*, and is already available to ThermoLife. There is no reason that ThermoLife cannot prepare for trial on these proposed Counterclaims within the schedule already entered by the Court.

## II.      BACKGROUND

HumanN develops and sells high-quality supplements and functional foods that can help enhance production of nitric oxide, an important vascular molecule. Human's products include Neo40® ("Neo40"), BeetElite® ("BeetElite"), and the SuperBeets® ("SuperBeets") family of products that include SuperBeets powders and SuperBeets Heart Chews. Ex. A ¶ 2. ThermoLife holds a patent portfolio, including U.S. Patent Nos. 9,180,140 ("'140 Patent"), 8,455,531 ("'531 Patent"), 10,555,968 ("'968 Patent"), and 10,842,813 ("'813 Patent"), it contends must be practiced by any company offering a nitric oxide supplementation product. *Id.* ¶¶ 1, 17, 18. ThermoLife has for years conducted a self-described "war" against HumanN, in an effort to either secure an *in terrorem* license fee, or to "systematically dismantle" HumanN. Ex. A ¶¶ 4, 27.

### A.      ThermoLife repeatedly sues HumanN and then voluntarily dismisses its claims

ThermoLife filed its first suit against HumanN in the District of Arizona on June 27, 2016, Case No. 16-cv-2070 ("*ThermoLife I*"), accusing HumanN's SuperBeets, BeetElite, and Neo40 of infringing the '140 Patent. *See* Ex. A ¶ 22. In pre-litigation correspondence, however, HumanN demonstrated it did not practice the '140 Patent. *Id.* ¶ 21. After filing *ThermoLife I,* ThermoLife did not actively pursue its claims. Instead, the case was stayed, and on January 3, 2018, ThermoLife voluntarily dismissed the action. *Id.* ¶ 24.

On September 3, 2018, following its voluntary dismissal of *ThermoLife I*, ThermoLife sent a lengthy and graphic email to Joel Kocher, HumanN's co-founder and CEO, threatening to "cripple" and "systematically dismantle" HumanN if it did not pay ThermoLife millions of dollars. Ex. A ¶ 25 (quoting email from R. Kramer to J. Kocher (Sept. 3, 2018)); *see also* Ex. 1 attached to Second Amended Counterclaims ("Kramer Email"). Calling Mr. Kocher "completely ignorant," ThermoLife's email stated it would be "fun" "to implement the strategy we have prepared to systematically dismantle You and HumanN," Kramer Email at 1 & 3. The email made "non-

negotiable" demands, stating a deal would be "agreed on the terms I am presenting to you here," or ThermoLife "will put an abrupt end to your charade." *Id.* at 3; *see also id.* at 1 ("We say the price, and either you agree, or we sue you. That is all.") ThermoLife gave HumanN "10 days to salvage the future of your company," and threatened that: "A full legal assault is now 1000% ready to implement . . . ." *Id.* at 3; *see also* Ex. A ; *see also* Ex. A ¶ 27. The email further declared "YOU are not sharing any of the golden eggs with us so why should we care about killing **your** Golden Goose?" Ex. A ¶ 27, Kramer Email at 2. ThermoLife continued with this explicit metaphor:

> you are just stealing from us and lying to consumers and keeping all the golden eggs for yourself. **That is why we have no problem killing your proverbial goose, by skinning it alive, then gutting it and eating it for ourselves**.

*Id.* (emphasis added); *see also* Kramer Email at 2.[2]

On September 20, 2018, after HumanN refused to give in to ThermoLife's threats, ThermoLife brought its second suit against HumanN (*ThermoLife II*), again in the District of Arizona. In that suit, ThermoLife asserted, among other torts, violations of the Lanham Act, 15 U.S.C. § 1125(a), as well as claims of false patent marking—alleging that HumanN did not practice patents it licensed from the University of Texas, and for which it was paying royalties. Ex. A ¶ 28.

On HumanN's motions, the District of Arizona Court dismissed ThermoLife's original and, in part, first amended complaints. *See ThermoLife Int'l, LLC v. Neogenis Labs, Inc.,* Case No. 18-cv-2980, 2019 WL 1438293, at *7 (D. Ariz. Apr. 1, 2019); *ThermoLife Int'l, LLC v. Neogenis Labs, Inc.*, 411 F. Supp. 3d 486, 503 (D. Ariz. 2019). Thereafter, Judge Lanza compelled ThermoLife to produce discovery relating to its surviving claims. *ThermoLife Int'l, LLC v.*

---

[2] While such threats would be disturbing coming from any quarter, they are particularity ominous given the history and reputation of ThermoLife's owner, Ron Kramer. A convicted felon, Mr. Kramer has a history of violence, having been charged with criminal aggravated assault and convicted for the crime of endangerment. *See* Ex. A ¶ 27, n.1.

*Neogenis Labs, Inc.*, No. 18-cv-2980, 2021 WL 1424408, at *7-8 (D. Ariz. Apr. 15, 2021);

*ThermoLife II*, ECF 225 (Jul. 6, 2021); Perloff Decl. Ex. B.

By this time, however, ThermoLife had already filed the instant suit, suing HumanN for

the third time. ECF 1 (Feb. 11, 2021) ("*ThermoLife III*"). Rather than comply with Judge Lanza's

discovery orders, ThermoLife voluntarily dismissed its claims in *ThermoLife II*. *See ThermoLife*

*Int'l, LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980, 2021 WL 2714746, at *1 (D. Ariz. Jul. 1, 2021).

**B.      ThermoLife tortiously interfered with HumanN's business with Amazon**

As part of its effort to pressure—and if necessary "dismantle"—HumanN and its founder,

ThermoLife resorted to extra-judicial tactics to sabotage HumanN's relationship with the online

retailer Amazon.

HumanN conducts a substantial portion of its business through Amazon. Ex. A ¶¶ 16, 33.

In March 2019—while HumanN's initial motion to dismiss in *ThermoLife II* was pending and

about to be granted—ThermoLife wrote to Amazon accusing HumanN's SuperBeets, BeetElite,

and Neo40 products of infringing either the '531 or '140 Patent. *Id.* ¶ 34.[3] ThermoLife's goal in

accusing HumanN of infringing its patents was to have "Amazon 'take immediate action to stop

the sale' of the accused products 'on Amazon.com.'" *Id.*

HumanN does not infringe either the '140 or '531 Patents. *Id.* ¶¶ 35-36. Nevertheless, as a

result of ThermoLife's misrepresentations, Amazon removed listings for certain HumanN products,

including SuperBeets, BeetElite, and Neo40, from its site. *Id.* ¶ 37. HumanN was then forced to

expend significant efforts to restore its product pages, and was unable to sell these top selling

---

[3] ThermoLife's March 2019 letter to Amazon predated Amazon's roll-out of its Neutral Patent
Evaluation Program.

products on Amazon during this time. It was not until April 4, 2019—nearly a month later—that these products were reinstated. *Id.* HumanN's sales and reputation suffered as a result. *Id.* ¶ 38.[4]

## C.      ThermoLife engages in false advertising about HumanN and its own products

Shortly after it filed its complaint in *ThermoLife II*, but months before it served HumanN, ThermoLife published a false and misleading "Press Release," calling HumanN a "liar" and a "thief," and making specific and false claims about supposed inadequacies in HumanN's products. *See* Ex. A. at ¶ 51 (quoting PR Newswire, "ThermoLife Serves HumanN a Beet Down" (Sept. 24, 2018)); *see also* Ex. 2 attached to the Second Amended Counterclaims. The Press Release—which remains online and accessible to HumanN's customers, potential customers, and business associates—was intended both to injure HumanN, and to help ThermoLife market its patent portfolio to HumanN's competitors in the nitric oxide supplement market. *Id.*[5] Indeed, ThermoLife actually solicited other companies to buy a license from ThermoLife to market ***HumanN's*** products. *Id.* (quoting Press Release). As the Court's orders dismissing ThermoLife's claims (and ThermoLife's abandonment of its suit) demonstrated, ThermoLife's accusations about HumanN were false and misleading. *Id.* ¶ 52. Nevertheless, ThermoLife's false advertising injured HumanN, damaged its reputation, and cost it sales. *Id.* ¶ 53.

---

[4] Having succeeded in interfering—at least temporarily—with HumanN's business relationship with Amazon and its customers, ThermoLife has since gone back to that well at least three more times, using Amazon's Neutral Patent Evaluation Program to falsely accuse HumanN of infringing ThermoLife's patents. *See* Ex. A ¶¶ 39-50. This Court has repeatedly enjoined ThermoLife's efforts to end run this Court's authority. *Id.*¶¶ 44, 46, 49; *see also* ECF Nos. 33, 45 & 47, 89.

[5] In its pleadings against HumanN in *ThermoLife II*, ThermoLife asserted it competes with HumanN through its sales of these ingredients to HumanN's direct competitors in the N-O supplement market. Ex. A ¶ 54.

In addition to its false commercial statements about HumanN and HumanN's products, ThermoLife also falsely advertises its own offerings. On its single-page website at www.thermolife.com, ThermoLife advertises its patent portfolio, telling supplement companies:

> **If you are interested in making a dietary supplement with nitrates in it** there is a very good chance your intended use or composition is covered by one or more of the 450 valid claims in our patent portfolio, so make sure to speak with us about a license. We are the only legitimate source for patented and licensed amino acid nitrates.

Ex. A ¶ 18 (emphasis in original) (image of ThermoLife website). ThermoLife offers ten nitrate ingredients, falsely claiming they are "FDA-NDIN✓" and "cGMP CERTIFIED":



*Id.*

ThermoLife's reference to "FDA-NDIN" is a representation that its ingredients are the subject of New Dietary Ingredient Notifications with the U.S. Food and Drug Administration. "The Federal Food, Drug, and Cosmetic Act (the FD&C Act) requires that manufacturers and distributors who wish to market dietary supplements that contain 'new dietary ingredients' notify the FDA about these ingredients." Ex. A ¶ 56 (citing 21 U.S.C. 350b(a), (c), & (d)). Such notifications "include information that is the basis on which the manufacturer or distributor has concluded that a supplement containing a new dietary ingredient will reasonably be expected to

be safe under the conditions of use recommended or suggested in the labeling." *Id.* (citing 21 U.S.C. § 350b(a)(2)). Of these ten ingredients listed by ThermoLife, only one—creatine nitrate—has an NDIN. *Id.* ¶ 57. Thus, ThermoLife's advertising of its remaining nine ingredients as subject to an NDIN is literally false. *Id.*

Similarly, ThermoLife's claim to offer "cGMP CERTIFIED" ingredients is also false. "cGMP" stands for "current Good Manufacturing Practices"—safety standards that are established by the FDA in federal regulations. *See* Ex. A ¶ 58 (citing 21 C.F.R. part 111). "Pursuant to these regulations, any person who manufactures, packages, labels, or holds a dietary supplement must establish and follow cGMP." *Id.*

In order to truthfully "certify" that an ingredient is manufactured in compliance with cGMP, ThermoLife would, first of all, have to know the identity of the manufacturer. Ex. A ¶ 59. ThermoLife, however, does not. During a hearing on HumanN's second motion to compel in *ThermoLife II*, ThermoLife admitted that it did not actually know who manufactures its nitrate ingredients. *Id.* (citing *ThermoLife Int'l, LLC v. Neogenis Labs, Inc.*, Case No. 18-cv-2980, Tr. of Proceeding (Jul. 6, 2021) (ECF 233) at 57:9-58:2) (Perloff Decl. Ex. C).

"ThermoLife's false representations that the ingredients it provides to HumanN's competitors are the subject of NDINs and are cGMP compliant gives companies incorporating those falsely advertised ingredients a competitive advantage." Ex. A ¶ 60. "Consumers purchasing N-O supplementation products would be less likely to purchase products if they knew that the ingredients are not compliant with cGMP standards, and had not been vetted by the FDA." *Id.* ThermoLife's false advertising is both material and has injured HumanN. *Id.* ¶¶ 60-61.

**D.      HumanN's false advertising and tortious interference claims were sustained against motions to dismiss in *ThermoLife II***

During the course of *ThermoLife II*, HumanN asserted counterclaims against ThermoLife for false advertising in violation of § 43(a) of the Lanham Act, based on ThermoLife's Press Release, and for tortious interference arising from ThermoLife's false accusations of infringement to Amazon in 2019. *See ThermoLife II*, ECF Nos. 83 (Feb. 19, 2020) (initial counterclaims), 117 (Dec. 2, 2020) (amended counterclaims). In an Order rejecting ThermoLife's motion to dismiss HumanN's false advertising claim, Judge Lanza held that the Press Release was not a protected statement of opinion:

> The headline of the press release, which is not qualified with the phrase "as alleged," affirmatively states that HumanN "sell[s] falsely advertised and misbranded products." (Doc. 104-1 at 2.) Resolving all reasonable inferences in favor of the non-movant, this is a statement of fact. Additionally, the quotation from Kramer includes an assertion that "HumanN relies on false representation after false representation to deceive consumers into purchasing HumanN's products." (*Id.* at 5.) Again, resolving all reasonable inferences in favor of the non-movant, this is a statement of fact rather than a statement of opinion.

*ThermoLife II*, 2020 WL 6395442, at *11. The court thus rejected ThermoLife's argument that HumanN's false advertising counterclaim was barred by the *Noerr-Pennington* doctrine. *Id.* ("ThermoLife cannot claim it is asserting its patent rights in a press release about a lawsuit that has nothing to do with enforcement of its patents.") In a later order, the Court also denied ThermoLife's motion to dismiss HumanN's amended counterclaim for tortious interference. *See ThermoLife II*, 2021 WL 1400818, at *11 ("HumanN has now provided detailed allegations that ThermoLife's communication concerning the '531 Patent was made in bad faith.")

However, by the time Judge Lanza upheld HumanN's counterclaims, ThermoLife had already filed *ThermoLife III*, and ThermoLife lost interest in litigating its Arizona claims. ThermoLife then moved the court to dismiss its claims in *ThermoLife II* and sought to stay HumanN's counterclaims, representing that:

> Resolution of ThermoLife's claims for patent infringement and HumanN's counterclaims for invalidity in that case [*ThermoLife III*] would likely have preclusive effect—and thus likely be dispositive of—HumanN's counterclaims in this case for false advertising [and] tortious inference with business expectancy[.]

*ThermoLife II*, ECF 189 at 1 (May 14, 2021), Perloff Decl. Ex. D; *see also id.* at 4 (arguing: "That suit [*ThermoLife III*] will resolve legal disputes between the parties that will be dispositive to likely all of HumanN's counterclaims in this case, namely whether HumanN's SuperBeets, BeetElite, and Neo40 products (the products raised in ThermoLife's Second Amended Complaint here) infringe ThermoLife's patents (the primary premise for HumanN's false advertising, trade libel, and unfair competition counterclaims), including the '140 patent (the same patent at issue in HumanN's counterclaim under Arizona's patent troll prevention act) and the '531 patent (the same referenced in HumanN's tortious interference claim)").

Judge Lanza initially denied ThermoLife's motion to voluntarily dismiss, *see ThermoLife Int'l, LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980, 2021 WL 2226192 (D. Ariz. Jun. 2, 2021), but ThermoLife immediately renewed its motion for voluntary dismissal—which the court thereafter granted. *See ThermoLife II*, 2021 WL 2714746, at *1. While acknowledging that "the parties (and the Court) could have avoided expending substantial resources on this action had ThermoLife pursued a different litigation strategy," *id.* at *4, Judge Lanza nevertheless concluded that controlling Ninth Circuit authority compelled allowance of the motion. *Id.*

Following the dismissal of its own claims in suit, ThermoLife refused to participate in the litigation of HumanN's counterclaims in *ThermoLife II*. ThermoLife immediately terminated its Arizona counsel who had brought and litigated the action, in favor of a small Washington D.C. firm that was unfamiliar with the proceedings. *See ThermoLife II*, ECF 243, at 1 (Oct. 21, 2021), Perloff Decl. Ex. E. Even with new counsel, ThermoLife still failed to participate in discovery, instead seeking multiple extensions of the schedule, but refusing to turn over the documents it had

twice been compelled to produce. *Id.* at 3-9 (detailing ThermoLife's repeated and broken promises to produce discovery). Thus, HumanN was put into the Hobson's choice of either "litigat[ing] a case where the counter-defendant will not participate, or purs[ing] additional sanctions motions to try and force ThermoLife to comply with its basic discovery obligations." *Id.* at 2. Instead, HumanN "reluctantly ask[ed] the Court to dismiss its Amended Counterclaims, without prejudice, so that HumanN will face only one front in its ongoing litigation with ThermoLife." *Id.* HumanN informed Judge Lanza and ThermoLife that HumanN intended to assert its false advertising and tortious interference claims in this action. E.g., Ex. E at 9 ("if this Motion is granted, HumanN will ask Judge Albright in the Western District of Texas proceedings for leave to file amended counterclaims there, which would encompass some of the facts and legal theories presented in the Amended Counterclaims.") The court granted HumanN's motion. *ThermoLife Int'l, LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980, 2021 WL 5084280 (D. Ariz. Nov. 1, 2021). Consistent with HumanN's request, the court directed that "any discovery already taken in this action shall be available to the parties in such future litigation," and that HumanN "shall not seek to relitigate any matters already resolved on the merits in this action." *Id.* at *5.[6]

While HumanN was preparing its amended pleadings in this case, ThermoLife launched its fourth attempt to sabotage HumanN's relationship with Amazon, this time asserting the '813 Patent. Given the irreparable harm to HumanN that could have resulted from ThermoLife's renewed interference with Amazon, HumanN moved on an emergent basis for leave to file its First Amended Counterclaims (Count ) seeking a declaratory judgment of non-infringement of the '813

---

[6] Prior to granting HumanN's motion for voluntary dismissal, and based in part on an Arizona statutory counterclaim which HumanN does not seek to raise herein, Judge Lanza had declined to transfer HumanN's counterclaims to this Court. *ThermoLife Int'l, LLC v. Neogenis Labs, Inc.*, No. 18-cv-2980, 2021 WL 3290532, at *5-6 (D. Ariz. Aug. 2, 2021).

Patent. HumanN now seeks leave to also raise the previously-asserted Counterclaims for tortious interference and false advertising.

### III.   ARGUMENT

Motions for leave to amend are subject to this Court's discretion. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). The deadline to amend pleadings in this case is not until March 3, 2022. Sched. Order, ECF 51, at 3. Accordingly, the "good cause" standard set forth in FED. R. CIV. P. 16(b) for untimely amendments does ***not*** apply. *Frantz Design, Inc. v. Diamond Orthotic Lab., LLC*, No. 19-cv-0970, 2020 WL 10314642, at *1 (W.D. Tex. May 26, 2020). Instead, this Motion is subject only to FED. R. CIV. P. 15(a)'s "freely given" standard. *Id.* As the Supreme Court explained:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).

Rule 15(a) thus "'evinces a bias in favor of granting leave to amend.'" *Stripling*, 234 F.3d at 872. Indeed, "[u]nder Federal Rule of Civil Procedure 15(a), district courts must entertain a presumption in favor of granting parties leave to amend." *Dueling v. Devon Energy Corp.*, 623 Fed. Appx. 127, 130 (5th Cir. 2015) (quotations omitted); *see also Stripling,* 234 F.3d at 872 ("Unless there is a 'substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'") Accordingly, "[m]otions for leave to amend should be granted absent (a) undue delay, (b) bad faith or dilatory motive on the part of the movant, (c) repeated failure to cure deficiencies by amendments previously allowed, (d) undue prejudice to the non-moving party, and (e) futility of amendment." *Frantz Design,* 2020 WL 10314642, at *1; *accord, Foman*, 371 U.S. at 182.

There are no circumstances that warrant denial of this Motion and granting HumanN leave is consistent with the Supreme Court's mandate that "leave to amend shall be freely given when justice so requires." *Foman*, 371 U.S. at 182.

**A.    HumanN did not unduly delay in asserting its counterclaims**

The Fifth Circuit cautions that "delay alone is an insufficient basis for denial of leave to amend." *Dueling,* 623 Fed. Appx. at 130 (quotations omitted). Rather, "[t]he touchstone for denial of leave to amend under Rule 15(a) is prejudice. Thus, delay warrants dismissal only if the delay presents the possibility of serious prejudice to the opponent." *Id.* (quotations omitted) (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir. 2001); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598–99 & n. 2 (5th Cir. 1981)). Critically:

> Delay is undue and prejudicial if it hinders the opposing party's ability to respond to the proposed amendment or to prepare for trial. This Court and other courts have found prejudice, for instance, if the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial.

*Dueling*, 623 Fed. Appx. at 130 (collecting cases); *see also Schvimmer v. Office of Court Admin.*, 857 Fed. Appx. 668, 673 (2d Cir. 2021) (rejecting contention that a ten-month delay was "undue," explaining: "most delays warranting denial of leave to amend are several years in length and are discussed in conjunction with prejudice or bad faith.")

None of these circumstances apply. Discovery has just opened in this case, the dispositive motion deadline is many months away, and trial likely will not be held until early 2023. *See* ECF 51 at 3-4; Tr. of Proceedings held on Dec. 10, 2021 (ECF 85) at 68:17-69:1. Nor was there any delay. HumanN's Counterclaims for false advertising and tortious interference were promptly raised in *ThermoLife II*, and timely raised herein following ThermoLife's abandonment of that suit and the grant of HumanN's motion to voluntarily dismiss its claims in that forum so that all disputes between these parties could proceed in the venue most recently selected by ThermoLife.

**B.      ThermoLife faces no undue prejudice**

"The party opposing amendment has the burden of proving prejudice." *U.S. Commodity Futures Trading Comm'n. v. Financial Robotics, Inc.,* No. 11-cv-2446, 2013 WL 3280038, at *3 (S.D. Tex. Jun. 27, 2013*).* "A mere claim of prejudice is not sufficient; there must be some showing that [the party opposing an amendment] was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 488 (3d Cir. 1990) (quotations, citations, and ellipses omitted); *accord, Cano-Rodriquez v. Adams Cty. Sch. Dist. No. 14,* No. 19-cv-1370, 2020 WL 6049595, at *5 (D. Colo. Jul. 23, 2020) ("Undue prejudice has been construed to mean undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the other party.") (quotations omitted); *Avedisian v. Mercedes-Benz, US, LLC*, No. 12-cv-936, 2014 WL 12705054, at *2 (C.D. Cal. Mar. 25, 2014) ("Undue prejudice means substantial prejudice or substantial negative effect.")

ThermoLife cannot meet its burden of demonstrating such prejudice here. To begin with, ThermoLife received notice of the nature and substance of these claims, in large part, during the proceedings in *ThermoLife II*, and had every opportunity to litigate them. While ThermoLife's own participation in discovery in *ThermoLife II* went from reluctant to non-existent after it brought the instant suit, *see* Ex. E at 3-9, ThermoLife nevertheless obtained from HumanN significant discovery, and had also served subpoenas—and received responsive documents—from third parties, including HumanN's beet powder ingredient supplier, Florida Foods. *See* Perloff Decl. Ex. C, *ThermoLife II,* Tr. of Proceeding held on July 6, 2021 (ECF 233) at 8:13-25). And as Judge Lanza's order ensured, all of that discovery is available to ThermoLife in these proceedings. *See ThermoLife II*, 2021 WL 5084280, at *5. While discovery on the Counterclaims is not complete—

largely due to ThermoLife's refusal to cooperate in discovery during the final months of *ThermoLife II*—it can and will be readily completed within the current schedule.

## C.    HumanN's amendment is not futile

In the context a motion for leave to amend, an amendment is "futile" only where "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling*, 234 F.3d at 872; *see also Transocean Offshore Deepwater Drilling, Inc.*, 659 F. Supp. 2d 790, 795 (S.D. Tex. 2009) (leave to amend should be denied only "if the court determines that 'allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency'") (granting motion for leave to file second amended complaint).

ThermoLife already challenged the sufficiency of these claims on the pleadings, and its challenges were rejected with respect to both HumanN's claim of false advertising, *ThermoLife II,* 2020 WL 6395442, at *11, and tortious interference. *ThermoLife II,* 2021 WL 1400818, at *11. Moreover, the proposed counterclaims assert *additional* facts to sustain these claims, including ThermoLife's ongoing false advertising of ingredients as the subject of FDA NDINs and as "cGMP Certified." Ex. A ¶¶ 18, 54-61. These additional facts further support HumanN's Counterclaims, already found sufficient by the *ThermoLife II* court. HumanN's Counterclaims thus are not "futile."

## D.    No other factors weigh against freely granting leave to amend

No other factors weigh against the presumption that this timely amendment should be "freely" allowed. ThermoLife can show no bad faith or dilatory motive. To the contrary, HumanN has tried to litigate in each venue serially chosen by ThermoLife, only to be confronted by ThermoLife's serial abandonment of its prior suits in favor of new actions. ThermoLife most recently chose this venue, and voluntarily dismissed its claims in *ThermoLife II*. HumanN wishes

to litigate *all* claims in this single action; the Second Amended Counterclaims will allow such a single and conclusive proceeding.

While the Court recently granted HumanN leave to file its First Amended Counterclaims, Docket Entry Dec. 21, 2021, the proposed Second Amendment is not sought because HumanN has "fail[ed] to cure deficiencies by amendments previously allowed . . . ." *Frantz Design*, 2020 WL 10314642, at *1. Rather, even in the context of this suit, ThermoLife has attempted to open up multiple proceedings—repeatedly attempting to implement Amazon's PEP for products and patents either in suit or closely related to them. ThermoLife's most recent efforts forced HumanN to seek an emergency amendment to ensure that the '813 Patent is formally in suit. *See* ECF 65 (motion for leave to file First Amended Counterclaims). HumanN's response to these unique circumstances—created by ThermoLife's repeated attempts to try this case in a different forum—does not reflect any lack of diligence or thoroughness on HumanN's part, but instead illustrates its appropriate and prompt reaction to a new front opened by ThermoLife in its self-declared war on HumanN.

## **CONCLUSION**

HumanN respectfully asks the Court to grant it leave to file its Answer and Second Amended Counterclaims.

Dated: December 22, 2021                    Respectfully submitted,

                                           *s/Saul Perloff*
                                           **Brett C. Govett**
                                           Texas Bar No. 08235900
                                           **Jacqueline G. Baker**
                                           Texas Bar No. 24109609
                                           **NORTON ROSE FULBRIGHT US LLP**
                                           2200 Ross Avenue, Suite 3600
                                           Dallas, Texas 75201
                                           Telephone: (214) 855-8000
                                           Facsimile: (214) 855-8200
                                           brett.govett@nortonrosefulbright.com
                                           jackie.baker@nortonrosefulbright.com

                                           **Stephanie DeBrow**
                                           Texas Bar No. 24074119
                                           **Michael Pohl**
                                           Texas Bar No. 24105942
                                           **Gabriel Culver**
                                           Texas Bar No. 24116240
                                           **NORTON ROSE FULBRIGHT US LLP**
                                           98 San Jacinto Boulevard, Suite 1100
                                           Austin, Texas 78701-4255
                                           Telephone: (512) 536-3094
                                           Facsimile: (512) 536-4598
                                           stephanie.debrow@nortonrosefulbright.com
                                           michael.pohl@nortonrosefulbright.com
                                           gabriel.culver@nortonrosefulbright.com

                                           **Saul Perloff**
                                           Texas Bar No. 00795128
                                           **Bob Rouder**
                                           Texas Bar No. 24037400
                                           **SHEARMAN & STERLING LLP**
                                           300 West 6th Street, Suite 2250
                                           Austin, Texas 78701
                                           Telephone: (512) 647-1970
                                           saul.perloff@shearman.com
                                           bob.rouder@shearman.com

                                           **ATTORNEYS FOR DEFENDANT
                                           HUMAN POWER OF N COMPANY**

## CERTIFICATE OF CONFERENCE

On Wednesday, December 22, 2021, at 12:00 p.m. Central time, a conference was held via telephone between counsel for HumanN, including Saul Perloff, and counsel for ThermoLife, including Amy Hayden, David Schackelford, and Christian Hurt. During the conference, Ms. Hayden stated that ThermoLife opposed this Motion.

*s/Saul Perloff*
Saul Perloff
Attorney for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the foregoing document and Exhibits A-E thereto to be electronically filed with the Clerk of the Court using the CM/ECF system for the Western District of Texas and that ECF-system will send a Notice of Electronic Filing to the CM/ECF participants in this case on this the 22nd day of December, 2021.

<div style="margin-left: 50%;">

*s/Saul Perloff*
Saul Perloff
Attorney for Defendant

</div>