IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HUMAN POWER OF N COMPANY, d/b/a HUMANN, f/k/a NEOGENIS LABS, INC.,<br><br>Defendant. | Civil Action No. 6:21-CV-00144-ADA |

**[PROPOSED]**
**ORDER GRANTING THERMOLIFE INTERNATIONAL, LLC'S MOTION TO STAY AND HUMAN POWER OF N COMPANY'S CROSS-MOTION FOR INDICATIVE RULING ON DISSOLUTION OF TEMPORARY RESTRAINING ORDER**

Before the Court are two motions: ThermoLife's Motion to Stay, filed on February 1, 2022, and HumanN's Cross-Motion for Dissolution and for an Indicative Ruling (the "Indicative Ruling Motion"), filed on February 8, 2022. In the Motion to Stay, ThermoLife asks the Court to stay its December 21, 2021 Temporary Restraining Order, ECF No. 88 (the "December TRO") enjoining ThermoLife from pursuing, via Amazon's Utility Patent Neutral Evaluation Process (the "Neutral Evaluation Procedure"), alternative dispute resolution regarding the patents and claims involved in this case. In the Indicative Ruling Motion, HumanN asks the Court to state that, consistent with its prior rulings in this case, the Court would grant HumanN's motion to dissolve the December TRO if the United States Court of Appeals for the Federal Circuit remanded for that purpose.

For the reasons described herein, the Court hereby GRANTS both motions.

1

# I.  FINDINGS OF FACT

**A.     ThermoLife's First Effort To Initiate The Neutral Evaluation Procedure.**

1. HumanN develops and sells food and dietary supplements.

2. ThermoLife initiated this action in February 2021 by filing a complaint against HumanN alleging that certain HumanN products infringe three ThermoLife patents.

3. HumanN sells the accused products and others via Amazon.com. Amazon is one of the world's largest retailers and one of HumanN's largest retail channels.

4. As a condition of listing its products with Amazon, HumanN is subject to Amazon's Neutral Evaluation Procedure. The Neutral Evaluation Procedure is a private, Amazon-run dispute-resolution framework that, as its procedures explain, "allows owners of U.S. utility patents . . . to obtain a fast evaluation of patent infringement claims against products . . . listed by third-party sellers . . . on amazon.com."

5. The purpose, format, and structure of the Neutral Evaluation Procedure are undisputed between the parties. That purpose is to evaluate the merits of patent infringement claims against products listed on www.amazon.com. A patent owner or exclusive licensee initiates the Neutral Evaluation Procedure by submitting an Evaluation Agreement to Amazon that identifies products alleged to infringe one or more claims of an asserted patent. Once submitted, Amazon sends that agreement to the alleged infringer who is faced with an ultimatum to either (1) submit to the evaluation by executing the agreement and paying the $4,000 evaluation fee, or (2) have the accused products removed from www.amazon.com. If the accused infringer chooses to participate in the Neutral Evaluation Procedure, Amazon appoints an Evaluator, who reviews the patent holder's patent infringement claim and makes a Yes or No decision about whether the patent covers the product listings. This process includes no discovery, trial, or hearing, and, with one limited exception, does not permit patent invalidity to be invoked as a defense. If the Evaluator

decides that the patent covers the product listings, those products are removed from Amazon's website, and no opportunity to appeal the decision is provided.

6. Amazon's procedures also provide that "[i]f there is litigation pending on a patent subject to a proposed or pending Evaluation, Amazon may decide not to initiate or suspend an Evaluation until the completion of this lawsuit." Despite that provision, in April 2021, ThermoLife initiated the Neutral Evaluation Procedure against HumanN, accusing HumanN of infringing one of the patents asserted in this litigation against HumanN products at issue in the case.

7. Shortly thereafter, HumanN requested from this Court a temporary restraining order and preliminary injunction prohibiting ThermoLife from continuing to pursue the Neutral Evaluation Procedure. Consistent with its position throughout this litigation, HumanN made clear that it sought to litigate in this case, whether through offensive claims by ThermoLife or declaratory-judgment claims, any and all patent disputes between it and ThermoLife involving any and all HumanN products ThermoLife wished to accuse. ECF No. 10 ¶ 61-62.

8. On April 21, 2021, upon finding that ThermoLife was "unlikely to suffer harm" from the requested temporary restraining order, and that there existed a "substantial risk of irreparable harm to HumanN, and to the jurisdiction of this Court, if ThermoLife were to attempt to enforce or further pursue extrajudicial review of patent infringement claims relating to the products already accused of infringement in this litigation," the Court granted the temporary restraining order HumanN had requested. The temporary restraining order prohibited ThermoLife from continuing to pursue the Neutral Evaluation Procedure relating to any patents or products involved in the case and set a preliminary injunction hearing for April 30—nine days later. ECF No. 33 at 1-2.

9. Shortly thereafter, Amazon provided notice to the parties that it was suspending the Neutral Evaluation Procedure ThermoLife had sought to initiate. Upon being informed of that suspension, the Court found "that HumanN is not likely to suffer any irreparable harm in the imminent future," and denied HumanN's request for a preliminary injunction. ECF No. 41 at 1.

**B.     ThermoLife's Second Effort To Initiate The Neutral Evaluation Procedure.**

10. On July 6, 2021, HumanN received a second notice from Amazon that ThermoLife was pursuing the Neutral Evaluation Procedure, and HumanN again sought judicial intervention.

11. The Court reinstituted its temporary restraining order with no objection from ThermoLife. However, five days later, Amazon again indicated that it would not proceed with its evaluation. HumanN thus declined to pursue a preliminary injunction, and this Court deemed the second temporary restraining order moot.

**C.     ThermoLife's Third Effort To Initiate The Neutral Evaluation Procedure.**

12. In November 2021, HumanN received yet another notice that ThermoLife had once again initiated the Neutral Evaluation Procedure against it.

13. This time, the Neutral Evaluation Procedure concerned a patent, U.S. Patent No. 10,842,813 ("'813 Patent"), that is in the same family of patents as those ThermoLife initially asserted in this case. Similarly, among the products ThermoLife accused are an array of products ThermoLife also accused in this litigation.

14. Shortly thereafter, HumanN filed a motion to amend its answer to add counterclaims that would unambiguously bring the '813 Patent into the case. Separately, HumanN filed another, materially identical TRO application.

15. The Court held a hearing on these motions on December 7, 2021.

16. On December 21, 2021, in a continuing effort to protect this Court's jurisdiction—which ThermoLife invoked—from ThermoLife's efforts to adjudicate its infringement claims

against HumanN in an outside, quasi-judicial forum, the Court granted both of HumanN's pending motions, permitting HumanN to add the '813 patent to its preexisting counterclaims and temporarily restraining ThermoLife from pursuing the Neutral Evaluation Procedure. In its newest TRO, the Court incorporated by reference its first TRO in this action, wherein the Court "f[ound]" that ThermoLife was "unlikely to suffer harm" and that there was "a substantial risk of harm to HumanN, and to [its own] jurisdiction . . . , if ThermoLife were to attempt to enforce or further pursue extrajudicial review of patent infringement claims relating to the products already accused of infringement in this litigation." ECF No. 33 at 1.

17.     In its Order holding in abeyance ThermoLife's motion for a stay pending appeal, the Federal Circuit advised that "hearing from the district court on this matter is particularly important given the somewhat cursory description of the grounds for injunctive relief." ECF No. 100-01 at 2. This Court's reasons for issuing the December TRO are supported by, *inter alia*, reference to the Court's previous orders in materially identical circumstances in this case. But for the avoidance of doubt: the December TRO was based on the relevant legal factors and the balance of equities and was an exercise of the Court's broad discretion to employ temporary equitable relief to protect its jurisdiction from what the Court determined to be a vexatious, quasi-judicial proceeding ThermoLife sought to initiate after bringing suit in this Court and in the hope of the obtaining relief it could not obtain here.

18.     Moreover, in the course of requesting the December TRO, HumanN made clear that it was "ready, willing, and able" to promptly seek a preliminary injunction if a TRO were granted. *See* Tr. of Hr'g (Dec. 7, 2021) at 51; *see also id.* at 54 (argument of HumanN's counsel). Accordingly, although the TRO did not on its face reflect the date on which it would automatically dissolve, it was entered within a framework wherein a motion for a preliminary injunction was

expected to be promptly brought, argued, and decided. ThermoLife did not raise with this Court any need for the TRO to say on its face that it would expire within any particular time period.

19. On December 22, 2021—the day after the Court entered its orders bringing the '813 patent into the case and temporarily restraining ThermoLife's pursuit of the Neutral Evaluation Procedure—Amazon again ceased the Neutral Evaluation Procedure, stating: "Thank you for updating us on the status of the on-going litigation between ThermoLife International, LLC and HumanN. In light of this new information, we will be pausing Evaluation 9143885261, deferring to the court's decision."

20. While Amazon's communication is not a model of clarity, the Court finds that the reason Amazon ceased the Neutral Evaluation Procedure on December 22 was not the December 21 temporary restraining order—which does not restrain Amazon—but instead the order granting the motion for leave to amend, which brought the '813 patent formally into this case. Amazon had previously informed HumanN and ThermoLife that it would "defer to th[is] court's decision in the case," and, prior to the December 21 orders, informed HumanN that it was reopening the Neutral Evaluation Procedure as to the '813 patent only because, at that time, Amazon believed "the current litigation between HumanN and ThermoLife will not decide infringement or validity of" the '813 patent. Amazon also did not restart the Neutral Evaluation Procedure after dissolution of the prior TROs in this case. Accordingly, as of December 22 (the date Amazon ceased the latest Neutral Evaluation Procedure), HumanN could no longer satisfy its burden of demonstrating an immediate risk of irreparable injury. As of that date and any time after, this Court would have dissolved the TRO if asked.

21. But ThermoLife did not ask the Court for that relief. Instead, one day later—and just two days after this Court entered the December TRO—ThermoLife filed a notice of appeal in

the Federal Circuit seeking vacatur or reversal of the TRO, ECF No. 91, placing in doubt this Court's continuing authority over the December TRO. *See, e.g.*, *Griggs v. Provident Consumer Discount Co.*, 459 U.S., 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Thereafter, ThermoLife moved in the Federal Circuit to stay the December TRO pending appeal. ThermoLife did not request that this Court enter an order staying or dissolving the December TRO. Nor did ThermoLife inform this Court of Amazon's action until after ThermoLife filed its notice of appeal. Accordingly, this Court had no opportunity to address the question of the December TRO's continuing validity.

22. On January 10, 2022, HumanN informed the Court that, in light of Amazon's action, it would not seek to convert the December TRO into a Permanent Injunction. HumanN also requested confirmation "that the TRO . . . is dissolved as a procedural matter." HumanN's stated ground was that, "When presented with similar circumstances earlier in the case, this Court held that Amazon's suspension of its Neutral Evaluation Process . . . mooted HumanN's then-pending request to convert the earlier TRO into a preliminary injunction."

**D.   The Federal Circuit's Order and the Parties' Motions.**

23. On January 31, 2022, the Federal Circuit entered an order holding ThermoLife's Motion to Stay in abeyance and directing ThermoLife to first attempt to obtain a stay from this Court, as the Federal Rules of Appellate Procedure require. The Federal Circuit specifically noted that "hearing from the district court on this matter is particularly important given the somewhat cursory description of the grounds for injunctive relief." ThermoLife then filed the instant Motion to Stay. While disagreeing with ThermoLife's arguments asserted in support of the Motion for Stay, HumanN does not oppose the entry of a stay order, and further filed a cross-motion to dissolve the December TRO and, because there is doubt about this Court's jurisdiction to grant

such relief, for an indicative ruling that this Court would have granted a motion to dissolve the December TRO as of December 22 and would do so now if the Federal Circuit ordered a limited remand to this Court for that purpose.

## II.  CONCLUSIONS

24.     HumanN has effectively agreed that it faces no immediate threat of irreparable injury if the December TRO—which it concedes no longer has practical effect—is stayed. Accordingly, the Court need not reach the question whether ThermoLife has shown a likelihood of success on the merits of its appeal. Instead, for the following reasons and on these facts, a stay pending appeal shall issue. As explained above, the December TRO was not intended to remain in effect indefinitely. Moreover, as of December 22, 2021 HumanN could no longer satisfy its burden to demonstrate an immediate risk of irreparable injury—a conclusion with which HumanN itself agrees. Accordingly, this Court would have dissolved the TRO if asked as of December 22, 2021, and the sole reason it has not yet done so is its deference to the Federal Circuit's possible jurisdiction over ThermoLife's appeal. Given that the threat of imminent injury that prompted the December TRO has dissipated, there is no longer a reason for it to remain in effect. If it cannot be dissolved, it should be stayed.

25.     For the same reasons, the Court concludes that the indicative ruling HumanN requests is warranted.

**THEREFORE:**

**IT IS ORDERED** that ThermoLife's unopposed Motion to Stay is GRANTED.  The Order Granting HumanN's Second Emergency Application For Temporary Restraining Order, ECF No. 88, is hereby STAYED pending completion of the pending appeal of that Order.

**IT IS FURTHER ORDERED** that HumanN's Motion for Indicative Ruling under Federal Rule of Civil Procedure 62.1 is GRANTED. Were the U.S. Court of Appeals for the Federal Circuit to order a limited remand to this Court for the purpose of granting a motion to dissolve the December TRO, this Court would grant such motion and dissolve that TRO. HumanN shall promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 of this ruling.

**SIGNED** on this _____ day of _____, 2022.

                                                ALAN D. ALBRIGHT
                                                UNITED STATES DISTRICT JUDGE